**David C. Lewis**, OSB No. 953348
Senior Assistant County Counsel
*Dave_lewis@washingtoncountyor.gov*
Office of Washington County Counsel
155 N First Avenue, Suite 250, MS 24
Hillsboro, OR 97124
Phone (503) 846-8747
Fax (503) 846-8636
Attorney for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LEONID P. KRIVOLENKOV, | No. 3:25-cv-00702-AR |
| Plaintiff, | |
| v. | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| ROXSEE HUFF, JAMES CUTHBERTSON, DAVID RAMBIN, and WASHINGTON COUNTY OREGON, | |
| Defendants. | |

## TABLE OF CONTENTS

LR 7-1 CERTIFICATION ........................................................................................................ 1

MOTION ................................................................................................................................... 1

LEGAL MEMORANDUM ........................................................................................................ 1

   I.      STATEMENT OF MATERIAL FACTS. ................................................................. 1

   II.     LEGAL STANDARD. ............................................................................................. 8

   III.    FEDERAL CLAIMS FOR RELIEF ........................................................................ 9

     A.  Qualified Immunity ................................................................................................ 9

     B.  First Amendment Retaliation – First Claim for Relief. ................................................ 10

     C.  Fourth Amendment Excessive Force – Fourth Claim for Relief. ................................. 13

     D.  Fourth Amendment Search and Seizure – Fifth Claim for Relief. ............................... 15

     E.  Fourth Amendment Malicious Prosecution – Sixth Claim for Relief. .......................... 23

   IV.   STATE TORT CLAIMS. ....................................................................................... 26

     A.  State Tort False Arrest, Assault and Battery – Second Claim for Relief. ..................... 27

     B.  State Tort Malicious Prosecution – Third Claim for Relief. ......................................... 30

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton,* 483 U.S. 635 (1987) ................................................................ 14

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ................................................... 13

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) ............................................................... 14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 30

*Bacon v. City of Tigard*, 81 Or. App. 147 (1986) .......................................................... 32

*Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404 (9th Cir.), *cert. denied*, 502 U.S. 994 (1991) ............ 12

*Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) ................................................... 29

*Blakenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) .......................................... 29

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .......................................................... 23

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988) ............................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ............................................................ 13

*Collins v. City of Colton*, 747 F. App'x 467 (9th Cir. 2018) ........................................... 29

*Colorado v. Bertine*, 479 U.S. 367 (1987) (automobile) ................................................ 26

*D.C. v. Wesby*, 583 U.S. 48 (2018) .............................................................................. 23

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ............................................................. 22, 23

*Dow v. Sears, Roebuck & Co.*, 84 Or. App. 664, 734 P.2d 1387 (1987) ......................... 28

*Dubner v. City & Cty. of San Francisco*, 266 F.3d 959 (9th Cir. 2001) ........................... 23

*Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2012) ................................................... 28

*Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018) .............................................. 19

*Florida v. Wells*, 495 U.S. 1 (1990) ............................................................................. 26

*Fossen v. Clackamas County*, 271 Or. App. 842 (2015) ................................................ 31

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) ........................................ 28

*Gigler v. City of Klamath Falls*, 21 Or. App. 753 (1975) ............................................... 34

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................................... 19

*Gregory v. City of Newberg*, No. 3:15-CV-473-BR, 2015 WL 5577755, at *5-7 (D. Or. Sept. 21, 2015) ........................................................................................................... 33

*Grobstein v. Port of Portland*, 2021 WL 1300115, at *11 (D. Or. Feb. 16, 2021) .......... 34

*Gustafson v. Payless Drug Stores*, 269 Or. 354 (1974) ................................................. 32

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) ....................................... 29

*Hartley v. State Water Res. Dep't*, 77 Or. App. 517 (1986) ............................................ 28

*Heck v. Humphrey*, 512 U.S. 477 (1994) ..................................................................... 20

*Heien v. North Carolina*, 574 U.S. 54 (2014) ............................................................... 21

*Hiber v. Creditors Collection Serv.*, 154 Or. App. 408 (1998) ....................................... 31

*Hopson v. Alexander,*71 F.4th 692 (9th Cir. 2023) ....................................................... 15

*Humbert v. Knutson*, 224 Or. 133 (1960). ................................................................... 30

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) ......................................... 19

*John v. City of El Monte*, 515 F.3d 936 (9th Cir. 2008) ................................................ 23

*Kansas v. Glover*, 589 U.S. 376 (2020) ........................................................................ 22

*Krivolenkov v. Ferrer*, No. 3:20-CV-00759-MO, 2020 WL 6152360 (D. Or. Oct. 20, 2020) ..... 15

*Lassiter v. City of Bremerton*, 556 F.3d 1049 (9th Cir. 2009).........................................................28

*LeRoy v. Witt*, 12 Or. App. 629 (1973)...............................................................................................32

*Linh Thi Minh Tran v. Kuehl*, No. 3:16-CV-00707-AC, 2019 WL 1877961 (D. Or. Apr. 26, 2019) ........................................................................................................................................33

*Lucas v. J.C. Penny Co.*, 233 Or. 345 (1963) ...................................................................................31

*Mata-Gonzalez v. Monico*, No. 3:11-cv-00260, 2013 WL 5476952 at *8
(D. Or. Sep. 27, 2013)..................................................................................................................28

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986)
.......................................................................................................................................................13

*Miller v. Columbia County*, 282 Or. App ...............................................................................27, 29, 32

*Mullenix v. Luna*, 577 U.S. 7 (2015)..................................................................................................14

*Napier v. Sheridan*, 24 Or. App. 761 (1976) ....................................................................................32

*Nelson v. Emerald People's Utility District*, 318 Or. 99 (1993)........................................................20

*Newman v. County of Orange*, 457 F.3d 991 (9th Cir. 2006)............................................................29

*Nieves Martinez v. United States*, 997 F.3d 867 (9th Cir. 2021) ................................................23, 29

*Nieves v. Bartlett*, 587 U.S. 391, 400-01 (2019)................................................................................15

*Picray v. City of Coburg*, No. CIV. 04-6172-TC, 2006 WL 1143081, at *2 (D. Or. Apr. 24, 2006) ...........................................................................................................................................21

*Prado Navarette v. California*, 572 U.S. 393 (2014)........................................................................22

*Price v. City of Sutherlin*, 945 F. Supp. 2d 1147 (D. Or. 2013) .......................................................34

*Pusateri v. Klamath Cty. Cmty. Dev.*, No. 1:18-CV-00058-MC, 2018 WL 468300, at *2 (D. Or. Jan. 18, 2018)..............................................................................................................................28

*Reichle v. Howards*, 566 U.S. 658 (2012) .........................................................................................14

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)...............................................................................15

*Rose (Betty) v. Whitbeck*, 277 Or. 791, modified, 278 Or. 463 (1977)..............................................28

*Schuler v. Chronicle Broad Co.*, 793 F.2d 1010 (9th Cir. 1986)......................................................13

*Scott v Harris*, 550 U.S. 372 (2007) .................................................................................................19

*Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994)..............................................................................29

*Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981) ...............................................................................29

*Smithart v. Towery*, 79 F.3d 951 (9th Cir. 1996)...............................................................................21

*South Dakota v. Opperman*, 428 U.S. 364 (1976)............................................................................26

*State v Miller*, 345 Or 176 (2008)......................................................................................................32

*State v. Ayvazov*, 246 Or. App. 641 (2011)........................................................................................32

*State v. Bourget–Goddard*, 164 Or. App. 573, *review denied*, 330 Or. 331 (2000) ....................32

*State v. Chilson*, 219 Or. App. 136, *review denied*, 344 Or. 670 (2008) ......................................33

*State v. Foster*, 350 Or. 161 (2011) ...................................................................................................32

*State v. Goodman*, 328 Or 318 (1999) ...............................................................................................32

*State v. Herbert*, 302 Or. 237 (1986) .................................................................................................32

*State v. McNally*, 361 Or. 314, 328 (2017) ........................................................................................25

*State v. Rayburn*, 246 Or. App. 486 (2011), *review denied*, 351 Or. 675 (2012) ........................32

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)....................................................................................13

*Tran v. Kuehl*, No. 3:16-CV-00707- AC, 2019 WL 1877977, at *5 (D. Or. Jan. 22, 2019) ........33

*United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993) ....................................................................26

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006)...................................................................23

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989)....................................................................................................................13

*Virginia v. Moore*, 553 U.S. 164 (2008) ................................................................................. 22
*Waldner v. Dow*, 128 Or. App. 197 (1994) ............................................................................. 29
*Westwood v. City of Hermiston*, 787 F. Supp.2d 1175 (D. Or. 2011) ...................................... 28
*White v. Pauly*, 580 U.S. 73 (2017) ....................................................................................... 14
*Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011) ............................................ 19

## Rules

Fed. R. Civ. P. 56 ............................................................................................................. 5, 12, 13
L.R. 56-1 ................................................................................................................................... 5
O.R.S. 161.233 ........................................................................................................................ 34

## Statutes

42 U.S.C. § 1983 .................................................................................................................... 13
O.R.S. 162.315 ........................................................................................................... 17, 24, 25
O.R.S. 30.265 .......................................................................................................................... 31
O.R.S. 30.271 .......................................................................................................................... 31
O.R.S. 30.273 .......................................................................................................................... 31
O.R.S. 807.570 .................................................................................................................. 17, 24
O.R.S. 811.375 ........................................................................................................................ 20
O.R.S.30.265 ........................................................................................................................... 31
ORS 162.315 ........................................................................................................................... 24

## Other Authorities

Oregon Tort Claims Act ........................................................................................................... 31
Washington County Code 9.12.040 .......................................................................................... 11

**LR 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1, counsel for Defendants Roxsee Huff, James Cuthbertson, David Rambin and Washington County, Oregon ("Defendants") certify that the parties have conferred telephonically and made a good faith effort to resolve the matters that are the subject of this motion for summary judgment but were unable to do so.

**MOTION**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56-1, Defendants hereby move this Court for summary judgment on all Plaintiff's claims for relief because there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law. In addition, individual defendants Roxsee Huff, James Cuthbertson and David Rambin are entitled to qualified immunity on Plaintiff's federal claims against them.

In support of this motion, Defendants rely on the legal memorandum set forth below, the Declarations of David C. Lewis, Roxsee Huff Feliciano, James Cuthbertson, David Rambin and Carlos Catibayan, with attached exhibits, and the pleadings on the file herein.

**LEGAL MEMORANDUM**

**I.      STATEMENT OF MATERIAL FACTS.**

On July 15, 2023, at about 15:30, Washington County Sheriff's Deputy Roxsee Huff was driving north on NW Bethany Boulevard in a fully marked Washington County patrol vehicle wearing her uniform and badge. (Declaration of Roxsee Huff Feliciano, ¶ 2.) She observed a blue Chevrolet Traverse quickly overtaking her from behind. (*Id*.) She noticed she was going 42 miles per hour and the speed limit on Bethany Blvd. was 35 miles per hour. (*Id*.) She reasonably estimated that the blue Chevy Traverse was traveling at approximately 45 miles per hour to overtake her. (*Id*.) She braked, saw the other vehicle brake, and got behind it. (*Id*.) The Chevy

Page **1** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Traverse, driven by a male, quickly changed lanes without properly signaling. (*Id*.) She activated her overhead lights to initiate a traffic stop and the driver changed lanes again and then turned right onto NW West Union Road. (*Id*.) However, the driver did not stop or show any signs of slowing down or pulling over. (*Id*.) She chirped her siren, and the driver turned on his right turn signal and pulled into a private driveway at 15200 NW West Union Road. (*Id*.) She pulled in behind him and stopped. (*Id*.)

She approached the passenger side of the vehicle, introduced herself to the driver and informed him that she was audio and video recording our encounter. (*Id*. ¶ 3.) She asked him about the reason for his speed. (*Id*. ¶ 4.) However, the driver asked about his speed and then as she attempted to explain, he told her to wait a second and began manipulating his phone. (*Id*.) She told him that he had been going over 10 miles per hour above the speed limit, but he again asked her to wait while he continued to manipulate his phone. (*Id*.) The entire encounter at the scene of the stop is captured on Deputy Huff's body worn camera ("BWC"). (Ex. 1 to Huff Dec.)

The driver pointed his cell phone at her and demanded her name and badge number. (*Id*. ¶ 4.) She pointed to her name, parts of her uniform and badge that identified her. (*Id*.) At about 15:35 on the BWC video, she asked him for his license, registration and proof of insurance – **first request**. (*Id*. ¶ 5; BWC Ex. 1 to Huff Dec.) The driver did not provide any of the requested documents or even attempt to gather them from inside his vehicle. (*Id*.) Instead, he proceeded to argue with her about how she calculated his speed. (*Id*.) She attempted to explain, but the driver kept arguing and talking over her. (*Id*.) She then ordered him to "give me your license, registration and proof of insurance or I will detain you" – **second request**. (*Id*.) Again, the driver failed to provide any of the requested documents or make any attempt to gather them. (*Id*.)

Deputy Huff radioed for "Code 1 cover" because she wanted a second officer present to cover her during the stop. (*Id*. ¶ 6.) The driver continued to argue and failed to take any steps to give her any of the required, requested documents. (*Id*. ¶ 7; BWC Ex. 1 to Huff Dec.) At about 15:36 on the BWC video, she told him again that if he did not give her his identification she would "detain" him – **third request**. (*Id*.) He again failed to give her any documents or take any steps to retrieve any documents from inside his car. (*Id*.) Instead, the driver continued to demand an explanation for how she determined his speed and when she attempted to explain, he continued to argue, talk over her and not listen to her explanation. (*Id*.) He was taking no steps to comply with her lawful orders to provide his license, registration or proof of insurance. (*Id*.)

At 15:36:50, she ordered him to get out of the care because he was being detained. (*Id*. ¶ 8; BWC Ex. 1 to Huff Dec.) He said "okay" and got out as Deputy Huff walked around to the driver's side. (*Id*.) As he got out, he demanded to know why he was being detained while holding his cell phone in his right hand. (*Id*.) Deputy Huff ordered him to put his hands behind his back, and he replied, "I don't think so." (*Id*.) She grabbed his right wrist with her left hand and he tried to pull away from her and switching his phone to the left hand. (*Id*.) She again ordered him "hands behind your back" and he again said, "I don't think so." (*Id*.)

As captured on the BWC, the male actively physically resisted her attempts to get his hands behind his back. She ordered him multiple times to put his "hands behind your back" as they physically struggled and he repeatedly said, "no," and physically resisted her attempts to get his hands behind his back. (*Id*.) He wedged himself against the door and physically resisted all attempts to get him into handcuffs or turned around. (*Id*.) Mr. Krivolenkov, the male in the BWC video, admitted in deposition that he "was actively trying to pull my arm that had my cell phone

and prevent Deputy Huff from violating my constitutional rights in taking my cell phone."

(Krivolenkov Depo. pp. 46-47, attached as Exhibit 1 to the Declaration of David C. Lewis.)

During the struggle, Deputy Huff radioed for "Code 3 cover" which means she needed

help for officer safety reasons and back up needed to use lights and sirens to get there with all

deliberate speed. (Huff Dec. ¶ 8, BWC Ex 1 to Huff Dec.; Declaration of David Rambin ¶ 2;

Declaration of James Cuthbertson ¶ 2.) At about 15:37, Deputy Huff stopped struggling to get

his hands behind his back and just maintained control of his right arm while waiting for back up

to arrive. (Huff Dec. ¶ 9, BWC Ex. 1 to Huff Dec.) Mr. Krivolenkov was not attempting to fight

with her by punching, hitting or kicking her. (*Id*.; Krivolenkov Depo. p. 47.) However, he was

still refusing to comply with her repeated commands to put his hands behind his back. (Huff Dec.

¶¶ 9, 11, BWC Ex. 1 to Huff Dec.) He asked her if she wanted his identification, to which

Deputy Huff replied, "yes, but not right now, you are being detained." (*Id.* ¶ 10.) He demanded a

supervisor and continued to argue loudly about the traffic stop and speak over the top of Deputy

Huff who again attempted to explain the stop to him. (*Id*.)

At about 15:38, Washington County Sheriff's Deputy David Rambin arrived as the first

cover officer. (*Id*. ¶ 11; Rambin Dec. ¶ 3.) Plaintiff was told he was under arrest. (Huff Dec. ¶

11, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 4, BWC Ex. 1 to Rambin Dec.) Deputy Rambin

grabbed Mr. Krivolenkov's right arm, pulled him away from the driver's door and held him

against the side of the vehicle, while Deputy Huff took control of Mr. Krivolenkov's left arm and

took his cell phone out of his left hand and tossed it on his driver's seat. (Huff Dec. ¶ 12, BWC

Ex. 1 to Huff Dec.; Rambin Dec. ¶ 4, BWC Ex. 1 to Rambin Dec.) Deputy Rambin told Mr.

Krivolenkov to put his hands behind his back and he complied. (Rambin Dec. ¶ 4, BWC Ex. 1 to

Rambin Dec.) Deputy Huff was able to get Mr. Krivolenkov into handcuffs, using only minimal force. (Huff Dec. ¶ 12, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 4, BWC Ex. 1 to Rambin Dec.)

As Mr. Krivolenkov was placed into handcuffs, Washington County Sheriff's Sergeant James Cuthbertson approached and identified himself as the supervisor. (Huff Dec. ¶ 13, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 5, BWC Ex. 1 to Rambin Dec.; Cuthbertson Dec. ¶ 3.) Mr. Krivolenkov was read his Miranda rights and exercised his right to remain silent. (*Id*.)

Deputy Rambin escorted Mr. Krivolenkov back to Deputy Huff's patrol car where he performed a pat down search incident to arrest and pursuant to Washington County Code. (Huff Dec. ¶¶ 15, 22, Ex 3 to Huff Dec.; Rambin Dec. ¶ 6, BWC Ex. 1 to Rambin Dec.; Cuthbertson Dec. ¶ 5.) Sgt Cuthbertson and Deputy Huff had a conversation about the stop and arrest. (Huff Dec. ¶ 14, BWC Ex. 1 to Huff Dec.; Cuthbertson Dec. ¶ 4.)

Mr. Krivolenkov asked why he was being arrested, and Deputy Huff attempted to explain. (Huff Dec. ¶ 16, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 7, BWC Ex. 1 to Rambin Dec.; Cuthbertson Dec. ¶ 6.) However, Mr. Krivolenkov kept talking over her, arguing and not listening to her. (Huff Dec. ¶ 16, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 7, BWC Ex. 1 to Rambin Dec.; Cuthbertson Dec. ¶ 6.) Deputy Huff then told Mr. Krivolenkov that he was going to jail and closed the vehicle door. (*Id*.)

The officers then had a conversation about the next steps, including calling for a tow because the vehicle was blocking a private driveway and doing an inventory of the vehicle prior to the tow. (Huff Dec. ¶ 17, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 8, BWC Ex. 1 to Rambin Dec.; Cuthbertson Dec. ¶ 7.) Sergeant Cuthbertson did a quick search of the driver's seat area of the vehicle incident to arrest and located Mr. Krivolenkov's identification. (Huff Dec. ¶ 18; Rambin Dec. ¶ 9; Cuthbertson Dec. ¶ 8.)

The officers had another conversation about the use of force and the arrest. (Huff Dec. ¶ 19, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 11, BWC Ex. 1 to Rambin Dec.; Cuthbertson Dec. ¶ 10.) Sgt. Cuthbertson told them that if Mr. Krivolenkov did resist enough to be charged with resisting arrest, then they need to write up a use of force report, but that if Mr. Krivolenkov did not fight, then the district attorney's office would not charge him with resisting arrest. (*Id.*) He told them that an option would be to cite and release him at the scene and cancel the tow. (*Id.*) Deputy Huff told them Mr. Krivolenkov did not fight but he did resist, "like passive resistance," and she was taking him to jail. (*Id.*)

Deputy Rambin did an inventory search of the vehicle prior to the tow as required by WCC 9.12.030 and then remained on scene waiting for the tow company. (Rambin Dec. ¶¶ 10, 12, BWC Ex. 1 and WCC 9.12.030 Ex. 2 to Rambin Dec.) Deputy Huff transported Mr. Krivolenkov to jail. (Huff Dec. ¶ 20, BWC Ex. 1 to Huff Dec.; Rambin Dec. ¶ 11; Cuthbertson Dec. ¶ 10.) Enroute to the jail, at about 16:07, Sgt. Cuthbertson called Deputy Huff on her cell phone to further discuss the arrest. (Huff Dec. ¶ 20; BWC Ex. 1 to Huff Dec.; Cuthbertson Dec. ¶ 11.) Deputy Huff told him that Mr. Krivolenkov did not fight with her, but she had "resistance," and also that there was "passive resistance." (*Id.*) She continued on to the jail. (Huff Dec. ¶ 21.)

At about 16:22, Mr. Krivolenkov was escorted into the jail by Washington County Sheriff's Corrections Deputies for processing. (*Id.*, BWC Ex. 1 to Huff Dec.) Those deputies did a routine inventory search of his person and property as required by Washington County Code 9.12.040 before lodging him in the jail. (*Id.* ¶ 22, BWC Ex. 1 and WCC 9.12.040 Ex. 3 to Huff Dec.) Deputy Huff then wrote up her Probable Cause Affidavit as required by the Jail booking procedures. (*Id.* ¶ 21, PC Aff'd Ex. 2 to Huff Dec.) In the PC Affidavit, Deputy Huff contemporaneously documented that Mr. Krivolenkov "actively pulled his arm away while I

attempted to turn him around" and physically prevented her attempt "to spin Lenoid's body around so I could get his hands behind his back again and he would not turn around." (*Id*.) These exact events are captured on her BWC between times 15:36:55 and 15:37:15. (BWC Ex. 1 to Huff Dec.) Mr. Krivolenkov admitted to actively trying to pull his arm away from her. (Krivolenkov Depo. p. 47, Ex. 1 to Lewis Dec.)

On July 16, 2023, Washington County Circuit Court Judge Wipper found probable cause for Mr. Krivolenkov's arrest. (Declaration of Carlos Catibayan ¶ 3, Order Ex. 2 to Catibayan Dec.) Mr. Catibayan is a Deputy District Attorney who was assigned to prosecute the matter of *State of Oregon v. Leonid Pavlovich Krivolenkov*, Case No. 23CR34999 (DA 423741), arising out of his arrest. (*Id*. ¶ 1.) He did not prosecute any resisting arrest charge because Mr. Krivolenkov did not fight or attempt to fight with Deputy Huff. (*Id*. ¶ 6.; *see also* Krivolenkov Depo. p. 47, Ex. 1 to Lewis Dec.) He did exercise his independent decision to charge Mr. Krivolenkov with failing to present his driver's license. (*Id*. ¶ 5, Charging Documents Exs. 3 and 4 to Catibayan Dec.) At no time did he have any conversation with Deputy Huff, Deputy Rambin, Sergeant Cuthbertson or anyone at the Washington County Sheriff's Office about what charges to file, and no one influenced or attempted to influence his decision to prosecute, continue to prosecute and eventually dismiss the charges against Mr. Krivolenkov. (*Id*. ¶ 4.; *see also* Huff Dec. ¶ 23; Rambin Dec. ¶ 13; Cuthbertson Dec. ¶ 12.) DDA Catibayan eventually exercised his independent discretion in the interest of conserving office resources to eventually dismiss the failure to present charge. (Catibayan Dec. ¶ 7.) The court dismissed the failing to present charge. (*Id*.; Judgment of Dismissal, Ex. 5 to Catibayan Dec.)

On October 9, 2023, Mr. Krivolenkov had a contested case hearing in Washington County Justice Court on the traffic violations. (Huff Dec. ¶ 24; Krivolenkov Depo. pp. 52-53,

Page **7** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

57-59.) The violations were presented to the Justice Court with both Deputy Huff and Mr. Krivolenkov, putting on evidence and testimony. (Huff Dec. ¶ 24; Krivolenkov Depo pp. 57-58.) At the conclusion of the hearing, the Justice Court Judge found Mr. Krivolenkov not guilty of the speeding violation but found him guilty of the unlawful or unsignaled lane change and failure to present proof of insurance violations. (Huff Dec. ¶ 24, Uniform Citation Ex. 4 to Huff Dec; Krivolenkov Depo. pp. 52-53, 58-59.)

## II.   LEGAL STANDARD.

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404, 1409 (9th Cir.), *cert. denied*, 502 U.S. 994 (1991). The moving party must carry the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

Once the moving party meets its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "[I]t [cannot] be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). Evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*,

865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Schuler v. Chronicle Broad Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (purely "subjective personal judgments do not raise a genuine issue of material fact.") Accordingly, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986).

## III.    FEDERAL CLAIMS FOR RELIEF.

Plaintiff raises four federal claims for relief under 42 U.S.C. § 1983: (1) First Amendment retaliation by his arrest, (Compl. ¶¶ 57-65); (2) Fourth Amendment excessive use of force, (*Id*. ¶¶ 74-77); (3) Fourth Amendment unlawful search and seizure, (*Id*. ¶¶ 78-85); and (4) Fourth Amendment malicious prosecution, (*Id*. ¶¶ 86-94). His federal claims are only asserted against the individual defendants in their individual capacities. (*Id*.) There are no federal municipal liability claims asserted. (*See Id*.)

### A.  Qualified Immunity.

Defendants Roxsee Huff, James Cuthbertson and David Rambin are entitled to qualified immunity on all of Plaintiff's federal claims for relief. The U.S. Supreme Court has repeatedly stressed the importance of qualified immunity, the standards guiding its proper application, and the need to apply those standards faithfully. *See White v. Pauly*, 580 U.S. 73 (2017); *Mullenix v. Luna*, 577 U.S. 7 (2015); *Reichle v. Howards*, 566 U.S. 658 (2012). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011) (internal citations omitted). "[W]hether an official protected by qualified

immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987).

To be "clearly established," the right must be so clear that "every reasonable official would [have understood] that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (internal citation omitted). In *Mullenix*, the Court noted, "[w]e have repeatedly told courts . . . not to define clearly established law at a high level of generality." 577 U.S. at 12 (internal citation omitted).

"[A] constitutional violation is clearly established only if existing law placed the constitutionality of the officer's conduct beyond debate, such that every reasonable official would understand that what he is doing is unlawful." *Hopson v. Alexander*,71 F.4th 692, 697 (9th Cir. 2023) (internal citations omitted). Existing precedent must have placed the "constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The burden of demonstrating a clearly established rule is squarely with the Plaintiff. *Hopson,* 71 F.4th at 698; *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (burden is on the plaintiff to identify precedent "that put [the defendant] on notice that his specific conduct was unlawful.")

**B.  First Amendment Retaliation – First Claim for Relief.**

Plaintiff claims that all individual defendants violated his First Amendment rights because he was "simply using his phone to record the deputies . . . during their public duties in a public place without interfering with the performance of those duties, [and] they retaliated against [P]laintiff for refusing to obey their unlawful commands and arrested him for simply standing firm in defense of his rights of freedom of the press, freedom of speech and freedom to peaceably protest and petition the government." (Compl. ¶ 63.) Of course, Plaintiff completely

ignores that he did not start recording until after he was lawfully stopped and he repeatedly refused Deputy Huff's commands for his license and registration and then refused her commands to put his hands behind his back in the course of his lawful stop and arrest so that he could continue recording. By his own admission, he was interfering in the performance of their duties. The First Amendment does not allow a person to interfere with or prevent their own lawful stop and arrest by claiming they needed to keep video recording. The existence of probable cause generally defeats a First Amendment retaliatory arrest claim. *Nieves v. Bartlett*, 587 U.S. 391, 400-01 (2019).

Plaintiff has made and lost this exact same argument previously during a traffic stop by the Oregon State Police. In *Krivolenkov v. Ferrer*, No. 3:20-CV-00759-MO, 2020 WL 6152360, (D. Or. Oct. 20, 2020), Plaintiff sued the Oregon State Police and two of its officers, Trooper Jacob Ferrer and Sergeant Kipo Raiser, following a lawful traffic stop that resulted in Plaintiff's arrest, alleging that the officers violated his First and Fourth Amendment rights by taking his cell phone and preventing him from recording during his arrest. *Id*. at *1. Plaintiff was pulled over for speeding and began recording on his cell phone from his driver's seat as soon as Trooper Ferrer approached his vehicle. *Id*. Trooper Ferrer informed Plaintiff that he was pulled over for speeding and asked for his driver's license. *Id*. Plaintiff repeatedly refused to provide his license and asked for a supervisor. *Id*. Trooper Ferrer repeatedly informed Plaintiff that he would be arrested if he did not provide his license. *Id*. Plaintiff continued to insist on the presence of a supervisor. *Id*. Trooper Ferrer informed Plaintiff that he was under arrest, opened the driver's side door and ordered Plaintiff out of the car. *Id*. Plaintiff then handed the Trooper his license. *Id*. Trooper still ordered Plaintiff out of the car and Plaintiff refused. *Id*. Trooper Ferrer then grabbed Plaintiff's hand/wrist knocking the cell phone out of his hand and onto the ground. *Id*.

Page **11** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff demanded that Trooper Ferrer pick up his phone so that he could call his lawyer and continue recording, but the Trooper refused. *Id*. at *2. After additional OSP Troopers arrived, Plaintiff exited his vehicle and was arrested. *Id*. His cell phone was put into an evidence bag. *Id*.

Plaintiff sued, claiming in relevant part that Trooper Ferrer's actions violated his First Amendment right to record the officers. *Id*. at *4. However, U.S.D.C. Judge Mosman rejected that claim finding no evidence of retaliation for Plaintiff's exercise of his First Amendment rights where "Trooper Ferrer knocked Mr. Krivolenkov's phone out of his hand to get Mr. Krivolenkov to comply with his lawful arrest and lawful command to step out of the vehicle." *Id*. Judge Mosman also granted Trooper Ferrer qualified immunity holding that "no case establishes that Trooper Ferrer's conduct violated that right. I find that a reasonable officer in Trooper Ferrer's position could have deemed it lawful to do what he did to effectuate the arrest, entitling him to qualified immunity." *Id*. at *5.

The facts of *Krivolenkov v. Ferrer et al*, are strikingly similar to Defendants' stop and arrest of Plaintiff here. Plaintiff was lawfully stopped by Deputy Huff.[1] In the course of her lawful stop, Plaintiff repeatedly refused to provide his license, registration and proof of insurance. (Huff Dec. ¶¶ 3-7; BWC Ex. 1 to Huff Dec.) His conduct constituted the misdemeanor crime of Failure to Present a License to a Police Officer when he refused the Deputy's requests to present and deliver his license in the course a lawful stop while driving. O.R.S. 807.570(1)(b)(A).

Deputy Huff then lawfully ordered Plaintiff out of the car to be "detained" and repeatedly ordered Plaintiff to put his hands behind his back. Plaintiff repeatedly verbally and physically refused her lawful orders. (Huff Dec. ¶¶ 8-11; BWC Ex. 1 to Huff Dec.) Plaintiff actively,

---

[1] The Justice Court finding of "guilty" on the unlawful or unsignaled lane change" moving violation establishes the lawfulness of the traffic stop as a matter of law. (Ex. 4 to Huff Dec.)

intentionally pulled his arm away from Deputy Huff and physically struggled with her to prevent her getting his arms behind his back, so that he allegedly could keep recording. (Huff Dec. ¶ 8; BWC 15:36:55 and 15:37:15 Ex. 1 to Huff Dec.; Krivolenkov Depo. pp. 46-47, Ex. 1 to Lewis Dec.) His active, physical resistance constituted the additional misdemeanor crime of Resisting Arrest. O.R.S. 162.315(1). Resistance is defined as "the use of . . . physical force that creates a substantial risk of physical injury and includes, but not limited to, behavior clearly intended to prevent being taking into custody by overcoming the actions of the arresting officer." O.R.S. 162.315(2)(b). Accordingly, probable cause existed as a matter of law and fact for Plaintiff's arrest. There is absolutely no evidence the Deputy Huff's motivation was anything other than identifying Plaintiff in the course of lawful traffic stop and then overcoming his physical resistance to get him detained or arrested when he committed crimes. Plaintiff cannot use the First Amendment as a shield to avoid his lawful stop and arrest for his conduct.

Furthermore, Deputy Huff is entitled to qualified immunity for lawfully stopping Plaintiff, attempting to execute a lawful arrest or detention, and for removing the cell phone from his hand so he could be handcuffed. Judge Mosman had previously granted OSP Trooper Ferrer qualified immunity for nearly these exact facts in another traffic stop and arrest of this same Plaintiff. *Ferrer*, 2020 WL 6152360 at *5. "[N]o case establishes that Trooper Ferrer's conduct here violated that right." *Id*. Similarly, and for the same reasons, Deputy Rambin and Sergeant Cuthbertson are entitled to qualified immunity for assisting in Deputy Huff's arrest.

### C. Fourth Amendment Excessive Force – Fourth Claim for Relief.

Plaintiff claims Deputies Huff and Rambin used "excessive and unreasonable force under the circumstances against plaintiff to effectuate the arrest in violation of his Fourth Amendment rights to be secure in his person." (Compl. ¶ 75.) However, the force Plaintiff complains of and is

shown on the BWC video is merely the routine force used to detain and handcuff during an arrest. Plaintiff suffered very minor marks on his body for which he sought no medical treatment, including a small cut to a finger, a small red mark or bruise to his upper right arm and a small red abrasion on his lower leg where he might have hit or rubbed on the door frame. (Krivolenkov Depo. pp 32-33, 35-43, depo exhibits 1-3.) Plaintiff only speculates how those cuts or marks may have occurred, and they may have been inadvertent, but believes they did not pre-exist his arrest and only lasted a few days. (*Id*. pp. 36, 38, 39, 40-41.) Any internal pain he allegedly suffered lasted only a few days. (*Id*. pp. 35-36.)

In order to determine whether an officer's use of force violated the Fourth Amendment, a Court must determine whether the force used was objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). This determination is made from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. at 396. Admittedly, excessive force cases often present disputed issues of material facts that make resolution on summary judgment inappropriate. However, in *Scott v Harris*, 550 U.S. 372 (2007), the Supreme Court held that the law enforcement defendants were entitled to summary judgment on an excess force claim, because the evidence presented - video evidence - showed clearly that excess force had not been used. The Court ruled that when, as in *Scott*, the material facts are not in dispute, the reasonableness of the use of force "is a pure question of law." *Id*. at 381.

Here, the "excessive and unreasonable force" Plaintiff complains of is the garden variety force incident to an arrest; force which by plaintiff's own photos and testimony caused only very minor marks on his arms and fingers. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Graham*, 490

Page **14** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

U.S. at 396. To evaluate the nature and quality of the intrusion on Plaintiff's Fourth Amendment interests, the Court considers the "type and amount of force inflicted." *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018) (quoting *Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011)). In evaluating the amount of force used, the Court considers the severity of the injuries. *Id*. The Courts can infer the force was minimal from the minor nature of the injuries. *Id*.

For example, in *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001), the Ninth Circuit evaluated whether defendant police officers were entitled to qualified immunity in a Fourth Amendment excess force claim where plaintiff was handcuffed and suffered a broken finger. After considering the nature and quality of the intrusion on the plaintiff, and the type and amount of forced inflicted in the arrest, the Ninth Circuit ruled that the officer was entitled to qualified immunity because the "nature and quality of the alleged intrusions were minimal" and the injury occurred during what was described as "normal handcuffing procedure." *Id*. at 651-53.

Here, where Plaintiff complains only of temporary pain and very minimal marks on his finger, arm and leg from being held against the car and handcuffed and for which he neither sought nor obtained any medical treatment, it is clear that Deputy Huff and Deputy Rambin are entitled to qualified immunity for the minimal force used to arrest him.

### D.  Fourth Amendment Search and Seizure – Fifth Claim for Relief.

Plaintiff's Fourth Amendment Search and Seizure claim is a broadly alleged claim that asserts his detention and arrest violated the Fourth Amendment because he was engaged in protected First Amendment activities. (Compl. ¶ 82.) Although, not stated in this claim, he appears to be asserting that the various searches of this person and vehicle were also violations of the Fourth Amendment "unreasonable search and seizure" prohibition. (Compl. ¶¶15-16, 24, 33-

35, 37-39, 48, 82.) Taking each step of the encounter in turn, Defendants are entitled to qualified immunity.

### 1.    Stop.

To the extent Plaintiff is contesting the lawfulness of the traffic stop, (*Id.* ¶¶ 20,82), Plaintiff is barred from doing so because following a contested case hearing in the Washington County Justice Court in which he presented testimony and evidence, he was found have committed the traffic moving violation of "Unlawful or Unsignaled Lane Change" in violation O.R.S. 811.375. (Huff Dec. ¶ 24, Ex. 4 to Huff Dec; Krivolenkov Depo. pp. 57-59, Ex 1 to Lewis Dec.) Accordingly, plaintiff cannot contest the lawfulness of his traffic stop under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Nelson v. Emerald People's Utility District*, 318 Or. 99 (1993). In *Heck*, the Supreme Court held that a civil rights suit for money damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable under § 1983. 512 U.S. at 486-87. In other words, *Heck* generally bars claims challenging the validity of an arrest, prosecution, or conviction. *See Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (under *Heck*, if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which § 1983 damages are sought, the § 1983 action must be dismissed).

Under *Nelson*, a party is precluded from subsequently litigating an issue of ultimate fact that has been determined by a valid and final determination. 319 Or. at 103. For issue preclusion to apply, Oregon requires the following five requirements be met: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in

privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. *Id*. at 104.

Here Plaintiff's unlawful stop claim is barred because all of the Nelson factors are met. First, the proceedings in Justice Court and this Court are the same: adjudication of the stop for a moving violation. Second, the issue was actually litigation and essential to a final decision on the merits. Third, the third and fourth elements are met because Plaintiff was the party in the prior proceeding and submitted evidence and testimony. Lastly, in Oregon, prior municipal court guilty findings on traffic citations are given preclusive effect in subsequent civil lawsuits. *Picray v. City of Coburg*, No. CIV. 04-6172-TC, 2006 WL 1143081, at *2 (D. Or. Apr. 24, 2006)

Regardless, under the Fourth Amendment, only reasonable suspicion is required to make a traffic stop. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014); *Kansas v. Glover*, 589 U.S. 376, 380 (2020). The reasonable suspicion standard "is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Glover*, 589 U.S. at 380. The standard depends upon the practical and commonsense considerations of everyday life on which reasonable and prudent people act, not legal technicians. *Id*. at 380-81. An officer is not required to rule out the possibility of innocent conduct. *Prado Navarette v. California*, 572 U.S. 393, 403 (2014).

Deputy Huff saw Plaintiff rapidly overtaking her from behind and realized that she was going 42 miles per hour and Plaintiff was going at least 45 miles per hour to overtake her. (Heff Dec. ¶ 2.) The speed limit was 35 miles per hour. (*Id*.) She braked, he braked and she got behind Plaintiff who rapidly changes lanes without properly signaling. (*Id*.) On the BWC, Plaintiff admitted to braking because she was braking and did not know what she was doing. (BWC at 15:36:20, Ex. 1 to Huff Dec.) He stated that she was "hauling ass," but wouldn't answer how

then was he able to catch up to her if he was not speeding. (*Id*. at 15:36:23). Reasonable

suspicion existed for the traffic stop and Deputy Huff is entitled to qualified immunity.

> ### 2.    Arrest.

Probable cause existed as a matter of law for his arrest. A warrantless arrest in a public

place complies with the Fourth Amendment as long as there was probable cause to arrest the

suspect for a crime, and the probable cause need not be for the crime articulated by the arresting

officer, or even for a "closely related" crime. *Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004).

Further, an arrest in a public place supported by probable cause complies with the Fourth

Amendment even where state law only authorizes a citation for the particular offense. *Virginia v.*

*Moore*, 553 U.S. 164 (2008).

The existence of probable cause renders an arrest lawful as a matter of law. *Dubner v.*

*City & Cty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Whether probable cause exists

depends upon the reasonable conclusion to be drawn from the facts known to the arresting

officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. Probable cause "is not a high bar"

and does not require an actual showing of criminal activity. *D.C. v. Wesby*, 583 U.S. 48, 57

(2018). Probable cause does not require law enforcement officers to support their seizure with

"certainty or even a preponderance of the evidence," but officers must be able to conclude that

there is a "fair probability" that the defendant committed a crime. *United States v. Gourde*, 440

F.3d 1065, 1069 (9th Cir. 2006). "[P]robable cause does not require officers to rule out a

suspect's innocent explanation for suspicious facts." *Wesby*, 583 U.S. at 61. "Once probable

cause to arrest someone is established, however, a law enforcement officer is not required by the

Constitution to investigate independently every claim of innocence, whether the claim is based

on mistaken identity or a defense such as lack of requisite intent." *Broam v. Bogan*, 320 F.3d

1023, 1032 (9th Cir. 2003). It is an objective standard. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).

First, the day after his arrest, Washington County Circuit Court Judge Wipper made a judicial determination of probable cause for the arrest. (Order, Ex. 2 to Catibayan Dec.) A prior judicial determination of probable cause to arrest Plaintiff precludes the Court from revisiting this issue. *Nieves Martinez v. United States*, 997 F.3d 867, 879 (9th Cir. 2021). After an initial arrest, "the Fourth Amendment demands a prompt judicial determination of probable cause" in order to continue detention before trial. *Id*. (citation omitted). "A finding of probable cause at a preliminary hearing is only reviewable in a subsequent civil proceeding when the plaintiff argues that the officers engaged in judicial deception." *Id*. (citations omitted). Judge Wipper relied upon Deputy Huff's Probable Cause Affidavit (the only testimony preceding the judge's probable cause ruling) which accurately states the facts supported by the BWC footage. Deputy Huff's statements in her Probable Cause Affidavit were truthful and are accurately reflected in her BWC footage. (Compare BWC at times 15:34 to 15:37, Ex. 1 to Huff Dec with PC Affidavit, Ex. 2 to Huff Dec.) Plaintiff's conduct constituted multiple crimes, including, but not limited to, misdemeanor Failure to Present a License to a Police Officer, O.R.S. 807.570(1)(b)(A), and misdemeanor Resisting Arrest, O.R.S. 162.315(1).

Second, probable cause existed to arrest Mr. Krivolenkov. First, it is undisputed that Deputy Huff asked Plaintiff multiple times for the license, registration and proof of insurance and that Plaintiff repeatedly failed to provide her any documents. (Huff Dec. ¶¶ 5-7, BWC time 15:35 to 15:36:50, Ex 1 to Huff Dec.) O.R.S. 807.570(1)(b)(A) provides that the person commits the crime "if the person . . . [d]oes not present and deliver such license or permit to a police officer when requested by the police officer . . . [u]pon being lawfully stopped or detained when

driving a vehicle." Failure to present is class C. misdemeanor. O.R.S. 807.570(5). Under the plain ordinary meaning of the statute, Plaintiff committed the crime.

Next, Plaintiff committed the crime of Resisting Arrest, ORS 162.315(1), when he actively and intentionally refused to put his hands behind his back and physically resisted her attempts to get his arms behind his back. It is undisputed that Plaintiff actively, intentionally pulled his arm away from Deputy Huff and physically struggled with her to prevent her getting his arms behind his back. (Huff Dec. ¶ 8; BWC 15:36:55 and 15:37:15 Ex. 1 to Huff Dec.; Krivolenkov Depo. pp. 46-47, Ex. 1 to Lewis Dec.) Resistance is defined as "the use of . . . physical force that creates a substantial risk of physical injury and includes, but not limited to, behavior clearly intended to prevent being taking into custody by overcoming the actions of the arresting officer." O.R.S. 162.315(2)(b). Plaintiff was clearly and undisputedly engaging in physical struggle with Deputy Huff that was clearly intended to prevent Deputy Huff from getting his hands behind his back and overcoming her attempts to get him handcuffed. His behavior does not have result in actual physical injury to the officer. *Id*.

He was not passively resisting when he prevented Deputy Huff from getting his hands behind his back, though he later only passively resisted when she stopped struggling to get his hands behind his back and just maintained control until help arrived. The Oregon Supreme Court has defined "passive resistance" to mean, "noncooperation with a government power without use of violence or active measures" or "noncooperation with a lawful order that does not involve active conduct." *State v. McNally*, 361 Or. 314, 328, 339 (2017). As depicted in the BWC, Plaintiff was engaging in active, physical resistive conduct. Deputy Huff is entitled to qualified immunity for her arrest.

Page **20** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Furthermore, because probable cause existed, Deputy Rambin is entitled to qualified immunity for assisting Deputy Huff in getting Plaintiff in handcuffs. Similarly, Sergeant Cuthbertson, who is alleged to have failed to properly supervise or intervene to stop the arrest, (Compl. ¶ 46), is also entitled to qualified immunity because probable cause existed. Sgt Cuthbertson also took further steps to ensure Deputy Huff knew her probable cause requirements by talking with her about the incident, the force and the arrest both at the scene and while Deputy Huff was transporting Plaintiff to jail. (Huff Dec. ¶¶ 14, 19, 20; Cuthbertson Dec. ¶¶ 4, 10-11.) Sgt Cuthbertson understood Deputy Huff's statements about "resistance" and "passive resistance" to mean that while Plaintiff did not fight with her as that term is commonly understood, he could also have taken physically active steps overcome her attempt to get Plaintiff into handcuffs. (Cuthbertson Dec. ¶ 10-11.) Exactly what Plaintiff did. Sgt Cuthbertson's understanding is supported by Deputy Huff's BWC footage that shows Plaintiff actively, physically resisting Deputy Huff's attempts to handcuff him. (BWC 15:36:55 and 15:37:15 Ex. 1 to Huff Dec.)

### 3.    Searches.

It is well established a search incident to arrest complies with the Fourth Amendment. *Moore*, 553 U.S. at 177. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id*. "The interests justifying search are present whenever an officer makes an arrest. A search enables officers to safeguard evidence, and, most critically, to ensure their safety during the extended exposure which follows the taking of a suspect into custody and transporting him to the police station." *Id*.

Similarly, inventory searches are also a well-defined exception to the warrant requirement of the Fourth Amendment both of person and automobile. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (automobile); *United States v. Bowhay*, 992 F.2d 229, 230 (9th Cir. 1993) (person and belongings). It is well established that inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard police from danger. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). The purpose of such a search is to "produce an inventory" of the items in the car, in order "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Washington County Code 9.12.040 requires searches of people arrested before they are placed into the back of patrol cars and before they are lodged in the jail. (Huff Dec. ¶ 22, WCC 9.12.040, Ex. 3 to Huff Dec.) Washington County Code also requires that officers search and inventory the contents of all vehicles impounded before the vehicle is released to a towing company and specifies the procedures for the inventory. (Rambin Dec. ¶ 10, WCC 9.12.030 Ex. 2 to Rambin Dec.)

Accordingly, Sgt Cuthbertson is entitled to qualified immunity for his search of the driver's seat area of Plaintiff's vehicle incident to arrest. (Cuthbertson Dec. ¶ 8.) Deputy Rambin is entitled to qualified immunity for his pat-down search of Plaintiff incident to his arrest and prior to putting Plaintiff into the back of Deputy Huff's patrol vehicle and his inventory search of Plaintiff's vehicle prior to the tow. (Rambin Dec. ¶¶ 6, 10.) Deputy Huff is entitled to qualified immunity for Plaintiff's search at the jail to the extent he is making such a claim. (Huff Dec. ¶

22.) Similarly, to the extent Plaintiff is seeking to hold any of them liable for failing to intervene in another deputy's search, they are all entitled to qualified immunity as set forth above.

### E.  Fourth Amendment Malicious Prosecution – Sixth Claim for Relief.

Plaintiff's Fourth Amendment Malicious Prosecution Claim appears to be a rehashing of his Fourth Amendment false arrest claim with the buzz word malicious prosecution elements added. (See Compl. ¶¶ 90-91.) He claims that he was maliciously prosecuted on the criminal charges of "Resisting Arrest and Failure to Carry or Present License."[2] (*Id.* ¶ 91.) However, Plaintiff's malicious prosecution claim fails.  Probable cause existed for the prosecution and Plaintiff fails to establish the Defendants Huff, Rambin or Cuthbertson influenced the prosecutor's independent decision-making.

First, Plaintiff was never criminally charged with or prosecuted on "Resisting Arrest" by the Washington County District Attorney. (Catibayan Dec. ¶ 6; Krivolenkov Depo. p. 47.) Accordingly, his malicious prosecution claim fails on that charge.

Rather, the Deputy District Attorney chose only to criminally charge him with Failure to Present a Driver's License. In the context of a claim under § 1983 for malicious prosecution, Plaintiff must prove: (1) the elements of the state law tort, and (2) with the intent to deprive plaintiff of a constitutional right. *Westwood v. City of Hermiston*, 787 F. Supp.2d 1175, 1205 (D. Or. 2011); *Pusateri v. Klamath Cty. Cmty. Dev.*, No. 1:18-CV-00058-MC, 2018 WL 468300, at *2 (D. Or. Jan. 18, 2018); *Mata-Gonzalez v. Monico*, No. 3:11-cv-00260, 2013 WL 5476952, at *8 (D. Or. Sep. 27, 2013). To prevail on a state law malicious prosecution claim, Plaintiff must prove: "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in

---

[2] His malicious prosecution claim relates solely to his criminal charges and not his traffic violations. (*Id.* ¶ 91.)

Page **23** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage because of the prosecution." *Rose (Betty) v. Whitbeck*, 277 Or. 791, 795, modified, 278 Or. 463 (1977); *Miller v. Columbia County*, 282 Or. App. 348, 360 (2016).

Probable cause is a complete defense to both federal and state malicious prosecution claims. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009) ("probable cause is an absolute defense to malicious prosecution"); *Hartley v. State Water Res. Dep't*, 77 Or. App. 517, 520 (1986) (holding same). The mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Probable cause is a question of law for the court unless the material facts are in dispute. *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2012); *Dow v. Sears, Roebuck & Co.*, 84 Or. App. 664, 679, 734 P.2d 1387 (1987).

As set forth above, probable cause existed to arrest Plaintiff on the crime of Failure to Carry or Present a License. Moreover, Washington County Circuit Court Judge Janelle Whipper judicially determined that probable cause existed in arrest Plaintiff. (Catibayan Dec. ¶ 3, Order Ex. 2 to Catibayan Dec.) A prior judicial determination of probable cause to arrest Plaintiff precludes the Court from revisiting this issue. *Nieves Martinez v. United States*, 997 F.3d 867, 879 (9th Cir. 2021).

Furthermore, it is well established that officials are not liable for damages suffered by the arrested person <u>after</u> a district attorney files charges, unless the presumption of independent judgment by the district attorney is rebutted. *Blakenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008). Plaintiff bears the burden of producing evidence to rebut the presumption of prosecutorial independence. *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). Plaintiff's account of the incident, alone,

is legally insufficient to rebut the presumption of independent prosecutorial judgement. *Collins v. City of Colton*, 747 F. App'x 467, 470 (9th Cir. 2018) (citing *Newman v. County of Orange*, 457 F.3d 991, 994-95 (9th Cir. 2006)).

Similarly, under state law, a law enforcement officer can only be liable for actively participating in the criminal prosecution by insisting or urging a prosecution the officer knows to be baseless. *Miller*, 282 Or. App. at 360; *Waldner v. Dow*, 128 Or. App. 197, 201-02 (1994). In general, when a law enforcement officer makes an arrest, and a prosecutor files a criminal complaint, investigating officers are immunized from liability "because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed] at the time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled on other grounds in Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008). One who merely gives information on which a prosecutor makes an independent decision to charge an offense is not liable for instituting the prosecution. *Humbert v. Knutson*, 224 Or. 133, 138-39 (1960).

Deputies Huff and Rambin wrote up their reports, accurately describing what they observed and their interactions with Plaintiff. They had no contact with the Deputy District Attorney. (Huff Dec. ¶ 23; Rambin Dec. ¶ 13; Catibayan Dec. 4.) They did not influence or attempt to influence the district attorney prosecutor's independent decision-making. (Catibayan Dec. ¶ 4.) Defendant Sgt Cuthbertson played no role whatsoever in the prosecution and had no contact with the Deputy DA. (Cuthbertson Dec. ¶ 12; Catibayan Dec. ¶ 4.) There was no attempt to influence at all by anyone. (Catibayan Dec. ¶ 4.) Plaintiff also fails to articulate any malice in the prosecution at all, other than alleging the buzzword "malicious" which is legally insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual development.'").

Malicious prosecution cannot lie where deputies accurately relayed their observations to the prosecuting attorney who makes an independent determination whether or not to prosecute. In this instance, the Washington County Deputy District Attorney Carlos Catibayan made the independent decision on what charges to pursue and what changes not to pursue without any influence from any individually named defendant. (Catibayan Dec. ¶¶ 4-7.) Deputies Huff and Rambin and Sgt. Cuthbertson are entitled to qualified immunity on this claim.

## IV.    STATE TORT CLAIMS.

Plaintiff also asserts two state law tort claims arising out of the same facts: (1) State law false imprisonment, assault and battery against all individual defendants and Washington County, (Compl. ¶¶ 66-69); and (2) State law malicious prosecution against Deputy Huff and Washington County, (*Id*. ¶¶ 70-73). He seeks damages on these state law claims "in amounts to be determined at trial to the fullest extent permitted under the Oregon Tort Claims Act." (Compl. Relief Requested ¶ B.)

First, because Plaintiff is only seeking damages to the maximum of the Oregon Tort Claims Act, the state law tort claims should be dismissed against Deputy Huff, Deputy Rambin and Sgt. Cuthbertson. The Oregon Tort Claims Act, O.R.S.30.265 *et seq.* establishes limits on the individual liability of public officers and employees working within the course and scope of their employment. O.R.S. 30.265(3) requires that where the damages amounts alleged are less than or equal to those in O.R.S. 30.271 through O.R.S. 30.273, "the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties . . . is an action against the public body." If an action is filed against

Page **26** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

individual officers of the public body under those circumstances, then "the court upon motion shall substitute the public body as the defendant." *Id.*

Regardless, as set forth above, summary judgment should be granted on all of Plaintiff's state law tort claims.

**A. State Tort False Arrest, Assault and Battery – Second Claim for Relief.**

First, on the false imprisonment claim: False arrest and false imprisonment have the same elements under Oregon law. *Hiber v. Creditors Collection Serv.*, 154 Or. App. 408, 413 (1998) (citing *Lucas v. J.C. Penny Co.*, 233 Or. 345, 353 (1963)). Claims for false imprisonment contain four elements: (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Fossen v. Clackamas County*, 271 Or. App. 842, 847 (2015).

To prevail on a claim for false imprisonment, "it is fundamental that the arrest must have been a false arrest, i.e., one made without legal authority. If the arrest was lawful, then it was privileged."[3] *Napier v. Sheridan*, 24 Or. App. 761, 765 (1976). Probable cause is question of law for the Court where the facts are not in dispute. *Miller*, 282 Or. App. at 355-56; *Napier*, 24 Or. App. at 768-69 (question of lawfulness of an arrest was "a question of law for the court"); *Gustafson v. Payless Drug Stores*, 269 Or. 354, 358 (1974) ("It is the court's function, not the jury's function, to determine the issue of probable cause.").

In addition, "if a person is arrested for two or more offenses simultaneously, probable cause for one charge is a complete defense to an action of false arrest." *LeRoy v. Witt*, 12 Or. App. 629, 631 (1973). Likewise, if an officer gives an invalid reason for an arrest, but the officer has probable cause for a different, valid reason for making the arrest, this will be a defense to

---

[3] Under Oregon law, to lawfully stop and detain a person for a traffic infraction, an officer must have probable cause to believe that the infraction has been committed. *State v. Isley*, 182 Or. App. 186, 190 (2002).

Page **27** of **35** – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

false arrest. *Bacon v. City of Tigard*, 81 Or. App. 147, 150 (1986). "An officer has probable cause to make an arrest if: (1) the officer subjectively believes that a crime has been committed; and (2) the officer's subjective belief is objectively reasonable under the circumstances." *Miller*, 282 Or. App at 357 (citing *State v Miller*, 345 Or 176, 184 (2008).)

Probable cause does not require certainty or proof beyond a reasonable doubt. *State v. Goodman*, 328 Or 318, 326 (1999); *State v. Herbert*, 302 Or. 237, 241 (1986); *State v. Ayvazov*, 246 Or. App. 641, 647 (2011), *review denied*, 351 Or. 675 (2012); *State v. Rayburn*, 246 Or. App. 486, 492 (2011), *review denied*, 351 Or. 675 (2012). An officer is not required "to "eliminate all possible lawful explanations for conduct that reasonably appears to violate the law." *State v. Bourget–Goddard*, 164 Or. App. 573, 578, *review denied*, 330 Or. 331 (2000); *see State v. Foster*, 350 Or. 161, 173 (2011) (in determining whether probable cause exists to search, "an observation made by police that is consistent with criminal conduct does not have to eliminate any possibility of an innocent explanation to provide probable cause"). Thus, where, as here, an officer is aware of facts that, on their face, constitute a crime, "[t]he potential existence of a defense or exemption is not relevant." *State v. Chilson*, 219 Or. App. 136, 141, *review denied*, 344 Or. 670 (2008) (probable cause exists when "the facts that the officer perceived establish probable cause to believe that an offense has occurred—that is, [that] the elements of an offense are present").

As set forth in the arguments above, probable cause existed to both stop Plaintiff for a traffic infraction and then in the course of that stop arrest Plaintiff for Failing to Present his License and for Resisting Arrest. Deputy Huff had both subjective and objective probable cause to stop and arrest him during the course of the encounter. (Huff Dec. ¶¶ 2, 8, 19-20.) Plaintiff cannot contest the lawfulness of the traffic stop because he was found guilty of a traffic moving

violation by the Washington County Justice Court. *See Gregory v. City of Newberg*, No. 3:15-CV-473-BR, 2015 WL 5577755, at \*5-7 (D. Or. Sept. 21, 2015) (applied *Heck* to plaintiff's common law false arrest, battery, and malicious prosecution claims as they would "call into question the lawfulness of [the plaintiff's] adjudication for interfering with a police officer and resisting arrest."); *see also Tran v. Kuehl*, No. 3:16-CV-00707- AC, 2019 WL 1877977, at \*5 (D. Or. Jan. 22, 2019), r*eport and recommendation adopted as modified sub nom. Linh Thi Minh Tran v. Kuehl*, No. 3:16-CV-00707-AC, 2019 WL 1877961 (D. Or. Apr. 26, 2019) (applied *Heck* doctrine to state malicious prosecution claim). Summary judgment should be granted on this claim.

Next, on the assault and battery claims: Under Oregon law, a "peace officer may use physical force upon another person" when it is "objectively reasonable, under the totality of circumstances known to the peace officer, to believe . . . [t]hat the use of physical force is necessary to . . . [m]ake a lawful arrest when the peace officer has probable cause to believe the person has committed a crime." O.R.S. 161.233(1)(b)(A). It is a complete defense to civil liability for assault or battery if the officer used force as authorized by statute. *Grobstein v. Port of Portland*, 2021 WL 1300115, at \*11 (D. Or. Feb. 16, 2021), *report and recommendation adopted*, 2021 WL 1299195 (D. Or. Apr. 7, 2021). An officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary to make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful. *Id*. There is a privilege under Oregon law that protects police officers from liability for assault and battery when "the physical violence exerted by the officers against plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty." *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975); *see also*

*Price v. City of Sutherlin*, 945 F. Supp. 2d 1147, 1157 (D. Or. 2013) ("[T]he success of a plaintiff's assault and battery claims [against a police officer] is contingent upon whether the use of force was excessive under the Fourth Amendment.")

As set forth above, the minimal force used on Plaintiff to get him into handcuffs was reasonable and privileged under both Oregon and Federal law. Summary judgment should be granted.

**B. State Tort Malicious Prosecution – Third Claim for Relief.**

As set forth above on the federal malicious prosecution claim, Plaintiff's state law malicious prosecution claim fails for the same reasons.

**<u>CONCLUSION</u>**

For all the reasons set forth above, all Defendants are entitled to summary judgment on all of Plaintiff's claims.

DATED: April 14, 2026

*s/David C. Lewis*
David C. Lewis, OSB No. 953348
Of Attorneys for Defendants Roxsee Huff, James
Cuthbertson, David Rambin and Washington
County, Oregon.

## CERTIFICATE OF SERVICE

I certify that on April 14, 2026, I served a true and correct copy of each of the documents listed below on the following attorneys and parties by one of the following methods as designated for each recipient of service below:

Mail        First class mail plainly addressed as shown and deposited, postage fully prepaid, on April 14, 2026, with the U.S. Postal Service for delivery.

ECF        Electronic filing with the Court.

Email        Electronic mail pursuant to ORCP 9 G/FRCP 5(b)(E).

Persons Served:

| Name and Address | Attorney for | Service Method(s) |
|---|---|---|
| Leonid P. Krivolenkov<br>11411 NE 47th Court<br>Vancouver, WA 98686 | Plaintiff, *Pro Se* | Mail<br>ECF<br>Email |

Documents:

| **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
|---|

*s/David C. Lewis*

David C. Lewis, OSB No. 953348

Of Attorneys for Defendants