LEONID P. KRIVOLENKOV
Plaintiff Pro se
11411 NE 47th Court
Vancouver, WA 98686
Telephone: 503-339-4069
E-mail: leokrivolenkov250k@gmail.com

FILED13 MAY '26 14:23USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| LEONID P. KRIVOLENKOV | Case No. 3:25-cv-00702-AR |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN** |
| v. | **OPPOSITION TO DEFENDANTS'** |
| | **MOTION FOR SUMMARY JUDGMENT** |
| ROXSEE HUFF, et al., | Request for Oral Argument |
| Defendant. | |

**For our God is a consuming fire.**  *Hebrews 12:29 NKJV*

## BACKGROUND AND STATEMENT OF MATERIAL FACTS

1.      On July 15th, 2023, on/or about 3:30 pm at/or near NW Bethany Blvd., and NW West Union Rd., he was lawfully operating a motor vehicle and was carrying in his possession a valid Washington State driver's license.

2.      Defendant deputy Roxsee Huff observed Mr. Krivolenkov allegedly driving over the posted speed limit and initiated a routine traffic stop alleging violation of (ORS 811.111), "at least" 10 mph over the posted speed.

3.      Mr. Krivolenkov requested the reason for the stop to establish the lawfulness of the stop.

Page 1 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4. Def. Huff only articulated the alleged speeding violation as the basis for the stop without indicating the method by which the alleged speed was calculated.

5. Def. Dep. Huff ordered Plaintiff to exit the vehicle to detain him.

6. Subsequently, Mr. Krivolenkov exited the vehicle, his property was taken from him (cell phone), an unreasonable and excessive force was used to place him into handcuffs.

7. On July 21st, 2023, Kevin Barton, District Attorney, through and by Carlos Catibayan, DDA filed a "District Attorney's Information" in the Circuit Court of the State of Oregon for Washington County, charging Mr. Krivolenkov with only one count of "FAILURE TO CARRY OR PRESENT LICENSE (C Misdemeanor; ORS 807.570), and in the description of alleged act(s) specifically articulating "…did drive unlawfully and knowingly drive a motor vehicle upon a highway in this State without a license."

8. On August 21st, 2023, the State filled "JUDMENT OF DISMISSAL" moving the Court to dismiss the charge. The Court granted the motion of the dismissal as to count 1 of the accusatory instrument filed herein and entered the order this matter is dismissed. Attached as *Exhibit 6* is a true and accurate copy of Judgment Of Dismissal.

9. Mr. Krivolenkov contested the alleged speeding violation, and the other two alleged violations of ORS 811.375 (Unlawful or Unassigned Lane Change) and ORS 806.012 (Failure to Present Insurance) as indicated on the Citation/Complaint. *See* Def. Dec. Huff Exhibit 4 Pg. 1.

10. Washington County Justice Court dismissed the alleged speeding charge finding Mr. Krivolenkov guilty on ORS 811.375 and 806.012. However, the court did not issue a signed judgment in the matter, therefore Mr. Krivolenkov reserves the right to appeal the convictions.

11. On April 28, 2025, Plaintiff commenced a civil action against the Defendants, a cause of action pursuant to 42 U.S. Code § 1983 to recover monetary damages, a civil action for deprivation of rights, of his First, Fourth, Fourteenth Amendments and common law tort claims.

## ARGUMENT

12. Mr. Krivolenkov will begin the discussion with bringing to the attention of the Court that Defendants' pleading i.e. "Defendants' Motion for Summary Judgment" and Declarations attached hereto are defective, legally and procedurally insufficient. Therefore, Plaintiff requests that the Court takes the issues under advisement and strike Defendants' motion, declarations, and exhibits entirely.

Defendants have filed records (Huff Dec. Ex. 2 and 4, and Catibayan Dec. Ex. 1, 2, 3, and 4) that jeopardize Plaintiff's privacy and are in violation of Fed. R. Civ. P. 5.2(a) and LR 5.2, when they filed records containing Plaintiff's full date of birth. Plaintiff therefore moves the court to immediately seal those records and order Defendants to redact and refile them.

13. The issues in discussion here have been brought to the attention of the Defendant's Attorney Mr. Lewis in an email sent by Plaintiff on April 20, 2026.

14. At issue are Declarations and Exhibits are from Def. Huff, Def. Rambin, and DDA, Carlos Catibayan.

15. DDA, Carlos Catibayan through and by Mr. David C. Lewis, Attorney for Defendants filed a Declaration in Support of Defendants' Motion for Summary Judgment (ECF 30), attaching Exhibits 1-5.

16. DDA Catibayan electronically signed the said pleading declaring that "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge."

17.    DDA Catibayan attached Exhibits 1-5 derived directly from custody of the Washington County District Attorney's Office. On March 30, 2024, Washington County Circuit Court for the State of Oregon ordered an expungement of conviction and/or all records in the Plaintiff's arrest case, signed by Circuit Court Judge, Brandon Thompson on 3/11/2024. A Copy of the Order was sent to WCDA. DDA, Catibayan violated the order, he did not file a motion with Washington County Circuit Court to unseal the records and thus is in contempt of court. Attached as *Exhibit 1* is a true and accurate copy of the original certified copy of judicial order.

18.    DDA Catibayan attached an "ORDER" as Exhibit 2, is what "appears to be a judicial order of finding of probable cause". However, this record appears to be fabricated, as it does not have a court case number, the date(s) both when it was heard and signed are rubber stamped and not typed in, and the booking number is hand whiten and not typed out. The verification of the correct copy is dated on 7/24/2023. What is even more aggreges is that during the Discovery phase in this case Mr. Lewis provided Plaintiff with a copy of the above-mentioned record labeled as "WC-0007" other than booking number is completely blank. Attached as *Exhibit 2* is a true and accurate copy of the WC-0007 ORDER.

19.    DDA's Catibayan Exhibit 2 appears to be a fabrication of records, it is reasonable to believe that WCDA has created "Templates" to rubbers stamp and fabricate court records that are used to falsely establish probable cause and to charge defendant(s) with a crime, as in this case charge the Plaintiff.

20.    Plaintiff during the period of malicious prosecution in the criminal case, does not recall above-mentioned ORDER to be on file and/or on the docket of the case.

21.     Such unlawful acts pursuant to ORS 162.295 are a crime of tampering with physical evidence, and pursuant to ORS 162.305 constitutes a crime of tampering with public records.

22.     Plaintiff reasonably beliefs that DDA Catibayan, in collusion with Mr. Lewis, Attorney for Defendants knowingly and intentionally filed false evidence, made false statements, and declarations under penalty of perjury to influence the outcome of this case favorably to Defendants, thus the motion is submitted in bad faith and in violation of Fed. R. Civ. P. 11(b).

23.     Pursuant to Fed. R. Civ. P. 11(c)(1) the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation, and pursuant to section (3) the Court may act on its own initiative. The copy(s) of both CD-R's Exhibit(s) (ECF 27  Ex. 1 Dec. Huff ) and (ECF 29 Ex. 1 Dec. Rambin) received from Defendants do not contain any data on them. They are blank.

24.     Plaintiff cannot reasonably respond to Defendants' motion without having an accurate record of Exhibits. However, will proceed with the response to best of his ability and preservation of due process. Plaintiff further states that he reserves the right to supplement/amend his responses, arguments, and defenses, etc., as the accurate record becomes available.

25.     For these reasons, Plaintiff moves the Court to Strike and/or Dismiss Defendants' Motion For Summary Judgment.

26.     Defendants failed to file timely and produce required records pursuant to LR 5, Exhibit 1 attached to Declaration of Huff and Rambin, they were filed after the Deadline of April 14, 2026.  LR 5-1 (a)(1) requires attorneys to register to e-file in CM/ECF, (3) requires that register users must file all pleading, documents **(including attachments and exhibits)**, (b)

Page 5 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

requires that a filing party is responsible for perfecting service on a Non-Registered User…, and LR 5-3(b) sets deadline, and (c) established completion of filing, "A document will be considered filed when all components of the document reside in the official court record." LR 5-3(c).

## A.    LEGAL STANDARD FOR SUMMARY JUDGMENT

27.    "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts[.]" *Nw. Motorcycle Ass 'n v. U.S. Dep't of Agric.,* 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. See *Celotex Corp. v. Catret*t, 477 U.S. 317, 323 (1986). Therefore, the genius issues of material facts in dispute are for the jury to decide who is the trier of those facts.

28.    Here is this case Summary Judgment is not appropriate. There are genuine issues as to material facts and the moving party i.e., Defendants are not entitled to judgment as a matter of law.

## B.    GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE.

29.    Plaintiff contends that the traffic stop was unlawful and without probable cause, and subsequent traffic violations were fabricated, and the testimony given by Huff during traffic trial as to the violations were false.

30.    ORS 810.420 Use of speed measuring device reads as follows; **(1)** "When the speed of a vehicle has been checked by a speed measuring device, the driver of the vehicle may be stopped, detained and issued a citation by a police officer if the officer is in uniform and has

Page 6 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

either:" **(a)** "Observed the recording of the speed of the vehicle by the device; **or" (b)** "Probable cause to detain based upon a description of the vehicle or other information received from the officer who has observed the speed of the vehicle recorded."

31.    Def. Huff admitted in her declaration that, *one* she herself was in violation of the posted speed by driving 42 mph in a 35-mph speed zone, *two* she did not use "speed measuring device" as required by law, and *three* she estimation "approximately 45 miles per hour" the Plaintiff's speed. Therefore, Huff's initial probable cause for the violation of ORS 811.111 "Violating a speed limit" to stop Plaintiff fails as a matter of law. *See* Def. Dep. Huff Dec. Pg. 1-2, L. 2., ECF 27.

32.    As to the violation of ORS 811.375 "Unlawful or unsignaled lane change", *See Def. Huff, Dec. Exhibit 4.* Def. Huff did not articulate any facts or even any mention thereof to Plaintiff during the initial conversation or at any other point in time. However, Def. Sgt. Cuthbertson stated in declaration "Deputy Huff described for me the circumstances of the moving violations she observed including him speeding, making lane changes, then not stopping as she got behind him and activated her lights." *See* Def. Cuthbertson Dec. Pg. 2, L. 4, ECF 28.

33.    Def. Huff in her description of lane changes to her Def. Sgt. Cuthbertson clearly articulated "lane changes". Lane changes are LAWFULL, there is no articulation of any unlawful movement of the vehicle i.e., unlawful or unsignaled lane changes.

34.    At to ORS 806.012 "Failure to Present Insurance", no discussion is necessary, as this alleged violation is a secondary non-moving violation, thus may not serve as the basis and/or probable cause for the stop.

35.    Notwithstanding, the finding of quilt by the Washington County Justice Court for the alleged violations of ORS 811.375 and 806.012, as previously mentioned the WCJC did not

issue a judicial order. Furthermore, the issue before this Court is not so much as to the fact of the lawfulness of the traffic stop, but rather to the genuine issue of a material fact of the Probable Cause for the arrest of the Plaintiff for the alleged crime(s) of Resisting Arrest and Failure to Carry or Present License. Plaintiff reserves the right and contends the traffic was unlawful (*emphasis added*). Attached as *Exhibit 3* is a true and accurate copy of the unsigned "blank" WCJC Conviction Abstract.

## B.    LACK OF PROBABLE CAUSE

36.    Def. Huff did not have probable cause to arrest Plaintiff for Failure to Carry or Present License and did not have probable cause to arrest Plaintiff for Resisting Arrest, **(11)** ""Probable cause" means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." *ORS 131.005 (11).*

37.    The Court must also decide if Plaintiff was detained or arrested.

38.    Def. Huff undisputedly stated multiple times in her Affidavit in Support of Probable Cause Arrest, in narrative of her Police Report and in her Declaration using the phrase "detained". "So, at 15:36:50, I told him to get out of the vehicle that he was being detained. He said "okay" and got out as I walked around to the driver's side door. As he got out, he demanded to know why he was being detained while holding his cell phone in his right hand." *See* Def. Huff, Dec. Pg. 3, L.8, ECF 27.

39.    Def. Huff states that Plaintiff was detained and not arrested, therefore it is conclusive Huff was detaining Plaintiff for an investigation into the unspecified crime, rather than arrest him for the crime based on the probable cause.

40.      Plaintiff explicitly offered his driver's license to Def. Huff, however Huff refused acceptance of the "ID", and thus contradicted herself in the detainment and subsequent establishment of probable cause for the arrest of ORS Failure to Present License. "He asked if I wanted his "ID" and I told him "yes, but **not** right now you are being detained.". *See* Def. Huff, Dec. Pg. 4, L. 10, ECF 27. *Also see* Def. Huff, Dec. Ex. 2, Pg. 2. Attached as *Exhibit 4* is a true and accurate copy of the Use of Force and Police Report narrative. *See page 6.*

41.      Plaintiff did not commit a crime of Failure to Present License, plaintiff was induced by Huff when she declined to except "ID", and unlawfully detained Plaintiff further placing him in handcuff, preventing him from any ability to comply, thus Huff's conduct constitutes "Entrapment". Entrapment "**(1)** The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the proscribed conduct because the actor was induced to do so by a law enforcement official, or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the actor in a criminal prosecution." "**(2)** As used in this section, "induced" means that the actor did not contemplate and would not otherwise have engaged in the proscribed conduct. Merely affording the actor an opportunity to commit an offense does not constitute entrapment." ORS 161.275.

42.      No prudent jury as a trier of fact would find that detainment was lawful and that there was probable cause to arrest Plaintiff for the crime of Failure to Present License. Therefore, in the presence of this genuine issue of material fact summary judgment is not appropriate, and Defendants are not entitled to qualified immunity as a matter of law.

43.      Additionally, the record is clear and undisputed that Plaintiff had his out-of-state Washington driver's license in his possession, this will further be discussed which was searched

Page 9 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

for and found by Def. Sgt. Cuthbertson. No reasonable officer would have believed that there was probable cause of a crime of ORS 807.570 under any element of the statute. "I did a quick search of the driver's area of the male's vehicle incident to his arrest and located his driver's license and cell phone." *See* Def. Sgt. Cuthbertson Dec. Pg. 3, L.8, ECF 28.

44.     Furthermore, the District Attorney upon review of the records did not charge Plaintiff with the element of failure to present license but rather drive a motor vehicle without a license in his possession, which is entirely different act and/or element of the alleged crime. Attached as *Exhibit 5* is a true and accurate copy of the District Attorney's Information.

45.     At to the alleged charge crime of Resisting Arrest and probable cause thereof, it fails as a matter of law. Plaintiff was not under arrest during the initial detainment or placement in handcuffs. The alleged "Resisting Arrest" is a secondary charge. There cannot be probable cause for the crime of Resisting Arrest if; 1) The detainment and/or the arrest is unlawful, especially when force is used and 2) Passive Resistance does constitute behavior intended to prevent being taken into custody. "**(1)** A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed any of the following: **(b)** A misdemeanor." *ORS 133.310.* "**(1)** A peace officer may use physical force upon another person only when it is objectively reasonable, under the totality of circumstances known to the peace officer, to believe: **(b)**That the use of physical force is necessary to: **(A)** Make a lawful arrest when the peace officer has probable cause to believe the person has committed a crime; **or**" *ORS 161.233.* "**(2)** As used in this section: **(c)**"Resists" means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does

Page 10 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody." *ORS 162.315.* "**(2)** Without regard to rank or assignment, a police officer or reserve officer shall intervene to prevent or stop another police officer or reserve officer engaged in any act the intervening officer knows or reasonably should know is misconduct, unless the intervening officer cannot intervene safely." ORS 181A.681.

46.    Def. Huff has repeatedly admitted and stated that Mr. Krivolenkov was passively resisting. "I told him that Mr. Krivolenkov did not fight, it was "like **passive resistance**."" *See* Def. Huff, Dec. Pg.6, L. 19, ECF 27. "I also used the term "**passive resistance**" again because he did not fight me, punch me or hit me." *See* Def. Huff, Dec. Pg. 7, L. 20, ECF 27. "Leonid continued to **passively resist** by not complying and not allowing me to move his body by keeping his feet planted and his back pressed against his vehicle." *See* Pl. Exhibit 4, Pg. 6. Finally, the Def. Huff's Police Report indicates in "Subject/Suspect Acton the following: Check Marked "Verbal, Check Marked "**Passive Resistance**", Check Marked "Verbal Resistance/Aggression 1, ALL other form is UNCHECKED. *See* Pl. Exhibit 4. Pg. 2.

47.    The record has clearly established that Plaintiff was not under arrest during the initial passive resistance but was being detained. Huff did not explicitly pronounce that Plaintiff is under arrest, and the law is clear and well established that passive resistance is not criminal. "Where defendant did not know defendant was under arrest, defendant could not resist arrest because this section requires defendant to act intentionally to resist arrest and such conscious objective requires knowledge of arrest." *State v. Olive,* 259 Or App 104, 312 P3d 588 (2013).

48.     Defendants in their deceptive attempt to influence the outcome of this case submitted misleading statements to this Court such as "actively physically resisting", extracting out of context a single word "actively" from Plaintiffs disposition answer and adding "physically resisting". *See* Lewis Dec., Exhibit 1, Pg. 19, L 1-8. This invented **buzz** phrase is not found in ORS 162.315 and is parroted in everyone's pleadings as if when they keep repeating it, somehow magically it would turn into a martial fact and/or admission of guilt. Resisting arrest conduct is very clearly defines the meaning of "Resists", "…behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer." ORS 162.315(2)(c).

49.     The proper way to examined Plaintiff's deposition answer is to read the entire Q. and A., beginning from Pg. 18, L. 6 "**Q** Were you doing anything to prevent Deputy Huff from putting you in handcuffs physically? **A** Passive resistance is all that was alleged and all that I was engaged in." *See Lewis Dec. Exhibit 1, Pg. 18, L. 6-9.*

50.     Defendants went as far as to recruit DDA Catibayan to supply them with fabricated false evidence, in support of the motion, and to submit a declaration under the penalty of perjury as to the truthfulness and accuracy of the record to influence the out of this case.

51.     Def. Huff had substantial knowledge of the law and its term "**passive resistance**", the definition, and applicability. She clearly had knowledge that "passive resistance" it is not criminal. Huff maliciously arrested and falsely charged Mr. Krivolenkov as a punitive measure, because Plaintiff failed to comply with her unlawful orders. The court in *Moravek* quoting from *McNally* defined passive resistance, the court held that passive resistance "refers to noncooperation with a peace officer's lawful order that does not involve violence or active measures, whatever the motivation for the noncooperation and regardless of whether the

noncooperation takes the form of acts, techniques, or methods commonly associated with civil rights or other organized protest." *State v. Moravek* 297 Or. App. 763 (Or. Ct. App. 2019).

52.    DDA Carlor Catibayan is one of the many corrupt County Prosecutors who did move to dismiss the case not because of his "independent discretion in the interest of conserving our office resources not to charge Mr. Krivolenkov with Resisting Arrest…" adding he did not fight or attempt to fight with them, but because there was no probable cause of any crime and DDA had no defense to prosecute the case for any alleged criminal charge. See Dec. DDA C. Catibayan, Pg. 2, L. 6, ECF 30. "**(3)** It is no defense to a prosecution under this section that the peace officer or parole and probation officer lacked legal authority to make the arrest or book the person, provided the officer was acting under color of official authority." *ORS 162.315*. "**(3)** Except as provided in ORS 813.110 (Temporary permit upon confiscation of license), it is a defense to any charge under this section that the person so charged produce a license, driver permit or out-of-state license that had been issued to the person and was valid at the time of violation of this section." ORS 807.570.

53.    There is no dispute that Mr. Krivolenkov had a valid out-of-state driver's license at the time of the alleged violation of ORS 807.570, and such license was found during unlawful search of his vehicle, and was produced in discovery to the DA.

54.    Def. Dep. Huff retaliated against Plaintiff for his freedom of speech during the time he was simply asking questions to establish the lawfulness of the stop "**(1)** A person commits the offense of failure to carry a license or to present a license to a police officer if the person either: **(b)** Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances: **(A)** Upon being

lawfully stopped or detained when driving a vehicle." *See ORS 807.570 (1)(b)(A),* therefore, by ordering him to step out his vehicle to unlawfully detain him, and to seize his phone violated his First and Fourth Amendment rights. Especially that there is a genuine dispute of a material fact as to the lawfulness of the traffic stop. (*emphasis added*).

55.     The U.S. Court of Appeals for the Ninth Circuit has held that there is a First Amendment right to record matters of public interest in public places, which "includes the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. Dep't of Homeland Sec.,* 899 F.3d 1035, 1044 (9th Cir. 2018); *see also Fordyce v. City of Seattle,* 55 F.3d 436 (9th Cir. 1995).

56.     Def. Dep. Huff was fixated on abusing her power and authority to retaliate against Plaintiff, and to take him to jail for any crime, violation, and/or anything whatsoever she could fabricate to ease the pain of her bruised ego, that in her own words, in her Declaration she states; I told them I was taking him to jail. "I had both subjective and objective probable cause to arrest him for multiple crimes, including resisting arrest,…" *See* Def. Huff, Dec. Pg. 6-7, L. 19-20, ECF 27. A mere "objective" probable cause is not sufficient, the law requires "substantial objective basis". *See* ORS 131.005(11).

57.     Huff also alleges "**multiple crimes**", what other crimes does Dep. Huff alleges here? Is it Fabrication and Falsification of charges? Plaintiff states yes it is.

58.     The record is clear, Mr. Krivolenkov was not taken to jail upon arrest based on probable cause of a crime(s), but as he was on the way to jail Sgt. Cuthbertson and Dep. Huff discussed and fabricated traffic violations and alleged crimes. "I did have a follow up conversation with Deputy Huff via cell phone while she was enroute to the jail to confirm the

Page 14 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

probable cause for the arrest." Sgt. Cuthbertson further admitted that he "did not witness the resistive behavior". *See* Def. Sgt. Cuthbertson, Dec. Pg.11, L. 11. ECF. 28.

59.    Why would there be any necessity to further discuss of "probable cause" if it has supposedly been established? Collectively these are precisely the issues of a material fact(s) that are in dispute that must only be decided by a trier of facts, that is the jury. Thus, summary judgment is not appropriate, and the law is clearly established, thus Defendants are not entitled to qualified immunity.

## C.    FOURTH AMENDMENT EXCESSIVE FORCE

60.    Fourth Amendment is violated when an officer uses unreasonable force (any amount of force) during an unlawful arrest.

61.    "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio, supra,* at 392 U. S. 20-22." *Graham v. Connor*, 490 U.S. 386 (1989).

62.    Factors in determining reasonableness according to *Graham v. Connor,* the analysis includes: (1) The severity of the crime at issue, (2) Whether the suspect posed an immediate threat to the safety of officers or others, and (3) Whether the suspect was actively resisting arrest or attempting to evade arrest flight.

63.    Here is this case it has been established that the alleged crime(s) is at most a misdemeanor. Plaintiff did not pose any threat to the officers or other and was not actively resisting the arrest.

64.     Thus, the use of force by Def. Rambin with the assistance of Def. Huff, was unlawful, unreasonable and excessive, when they grabbed Plaintiff's arm and slammed him against the vehicle applying force to his shoulder in violation of the Fourth Amendment.

## D.    FOURTH AMENDMENT FALSE ARREST AND SEARCH AND SEIZURE

65.     Def. Sgt. Cuthbertson conducted an unlawful search of Plaintiff's vehicle. Cuthbertson conducted a search of Plaintiff's car to search for evidence of his identity. Cuthbertson did not have consent, nor did he obtain consent.

66.     The law has been clearly established that "This statute does not authorize warrantless search for evidence of identity." *State v. Nelson*, 102 Or App 106, 792 P2d 486 (1990); State v. Towle, 102 Or App 643, 796 P2d 1208 (1990). As well as "Search of defendant for driver license was not reasonably related to crime of failing to present license." *State v. Scheer*, 99 Or App 80, 781 P2d 859 (1989). See ORS 807.570.

67.     Furthermore, pursuant to ORS 807.570(4) "A police officer may detain a person arrested or cited for the offense described in this section only for such time as reasonably necessary to investigate and verify the person's identity." Therefore, once the identity of Plaintiff has been established he must have been cited and released. Thus, Fourth Amendment was violated when Plaintiff was falsely arrested and falsely imprisoned.

68.     Therefore, by prolonging the stop, detaining and subsequently arresting Plaintiff without probable cause. The impounding of the vehicle and second unlawful search of Plaintiff's vehicle by Def. Dep. Rambin is in violation of the Fourth Amendment.

## E.    FOURTH AMENDEMNT MALICIOUS PROSECUTION AND TORT CLAIMS

69.     Defendants' argument as to the Plaintiff's Sixth Claim is entirely flawed. They are arguing that defendants did not influence the prosecutor's independent decision-making, and Plaintiff fails to establish that Huff, Rambin or Cuthbertson influenced the prosecutor's independent decision-making. Plaintiff does not have the burden of establishing "influence".

70.     Ninth Circuit has long recondensed the claim of Malicious Prosecution under the Fourth Amendment. Prosecution for a crime does not begin with the prosecuting attorney but rather it begins when a police officer initiates criminal action i.e., prosecution by filing a complaint and/or by a filing a police report. "**(6)** "Criminal action" means an action at law by means of which a person is accused of the commission of a violation, misdemeanor or felony." *ORS 131.005 (6).*

71.     Here Huff has initiated prosecution by accusing, issuing and filing a police report with the WCDAO charging Mr. Krivolenkov with both ORS 807. 570 Failure to carry or present license and ORS. 162.315 Resisting arrest. The Court must take into consideration that Huff did not issue criminal citation/complaint and did not file it with the court as required by law and as defined in ORS 131.005(3) and ORS 133.066.

72.     In *Chiaverini v. City of Napoleon* (2024), the Supreme Court held that a malicious prosecution claim can proceed if a baseless charge caused a seizure, even if other, separate charges in the same case were supported by probable cause. Here in this case, there was no probable cause of any crime.

73.     To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need not show that criminal prosecution ended with some affirmative indication of innocence. A Plaintiff needs

only to show that his prosecution ended without a conviction. See *Thompson v. Clark*, 596 U.S. 20-659 (2022).

74.     Mr. Krivolenkov, Plaintiff has satisfied that requirement, therefore the claim of malicious prosecution under the Fourth Amendment and the state Tort Claim can proceed.  See Pl. *Exhibit 6.*

75.     Equally because Mr. Krivolenkov was arrested without probable cause the False Arrest under the Fourth Amendment and State Tort Claim can proceed. The law is clearly established, and Defendants are not entitled to qualified immunity, and summary judgment is not appropriate here in this case.

76.     Finally, Huff has admitted to violating the speed law, she then without having her emergency lights on, intentionally came to near full stop in the middle of busy street placing Mr. Krivolenkov and other drivers at risk, thus constitutes "careless driving". She then abused her powers and authority to conduct a retaliatory traffic stop, subsequently falsely arresting and charging Mr. Krivolenkov with alleged crimes. Attached as *Exhibit 7* is a true and accurate copy of the audio and video recording of the traffic stop, recorded by Plaintiff, submitted on DVD.

## CONCLUSION

Defendants have cited *Krivolenkov v. Ferrer et al,* as the basis for their argument, as a strikingly similar to Defendants' stop and arrest of Plaintiff here. Let's compare, as in *Ferrer* and in this case ALL charges were dismissed by the DA, in *Ferrer* judge in that case scolded the DA for charging Mr. Krivolenkov as there was no crime committed, likewise DA in this case dismissed the criminal charge, and yes the alleged speeding was also dismissed. It is of no surprise to Mr. Krivolenkov, and I will state the following with absolute bluntness and

Page 18 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

courage…, as well with the outmost respect to our judicial system, there are traitor judges' to the United States of America and its Constitution who are biased and corrupt presiding in this very body of court, and USDC Judge Mosman is one I consider to be as such.

Therefore, Judge Jeff Armistead this case is your test whether you will honor the oath of your office and carry out the duties of your office to rule fairly, justly based on facts, evidence, law, rules of procedure, due process and totality of circumstances without bias and prejudice. Unlike my opponents, I don't seek favorable treatment, that this court improperly has allowed Defendants to receive. Now, I assume when it comes to my freedom of speech, that ALL parties are familiar with New *York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Furthermore, what we have here in this case is that the Attorney for Defendants and Washington County DDA have submitted false evidence and made false statements in their declarations under the penalty of perjury. Will the Court allow criminal conduct? Judge Jeff Armistead please don't underestimate or take advantage of Plaintiff's Pro se status.

The submission of false statements and evidence by Defendants and DDA is an insult to you Judge Armistead. Defendants have taken you for a judge who will be on their side protecting and covering for them regardless of justice and due process. Do you have a side judge?

*For by your words you will be justified, and by your words you will be condemned.*

Matthew 12:37 NKJV

## MOTION

For the reasons stated above, Leonid P. Krivolenkov, Plaintiff Pro se move the Court to Strike Defendants' Huff and Rambin Declarations as to Exhibit(s) 1, and Strike all portions of

Page 19 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the statements, arguments, and/or defenses rely upon those Exhibits and the Declaration of DDA

Carlos Catibayan in support of their Motion for Summary Judgment. Plaintiff further moves the

Court to deny Defendant Qualified Immunity and deny Defendants' Motion for Summary

Judgment as it is not appropriate in this case due to numerous genuine disputes of material facts.

## DECLARATION

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE

AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THE

STATEMENTS ARE MADE IN GOOD FAITH

Respectfully submitted,

Dated this **13th** day of May, 2026.

Leonid P. Krivolenkov
Plaintiff Pro se

Page 20 of 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2026, I served the foregoing:

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

To:    **David C. Lewis**, SACC
       Office of Washington County Counsel
       155 N First Avenue, Suite 250, MS 24
       Hillsboro, OR 97124
       Attorney for Washington County

By the following method as indicated:

**X**    by **mailing First Class** to said person(s) a true copy thereof, said copy placed in a sealed envelope, postage paid and addressed to said person(s) at the last known address for said person(s) as shown above, and deposited at USPS on the date set forth above.

DATED this **13**th day of May, 2026.              Respectfully submitted,

Leonid P. Krivolenkov
Plaintiff Pro se

*For the eyes of the Lord are on the righteous,*
*And His ears are open to their prayers;*
*But the face of the Lord is against those who do evil.*
                          1 Peter 3:12 NKJV

Page 1 of 1 – CERTIFICATE OF SERVICE